IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHARLES WILCOX,                              CV 08-6010-MA

         Plaintiff,                          OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

         Defendant.

KATHRYN TASSINARI
Dew L. Johnson, P.C.
1700 Valley River Drive
Eugene, OR 97401
(541) 434-6466

         Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1158


1 - OPINION AND ORDER

DAVID R. JOHNSON
Special Assistant United States Attorney
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2545

        Attorneys for Defendant

MARSH, Judge.

        Plaintiff Charles Wlcox seeks judicial review of
the Commissioner's final decision denying his April 27, 2005,
application for disability insurance benefits (benefits) under
Title II of the Social Security Act, 42 U.S.C. §§ 401-33.

        Plaintiff alleges he has been disabled since January 1,
2004, because of degenerative disc disease, depression, and
Post-Traumatic Stress Disorder (PTSD), connected to his service
in the United States Air Force from 1971-1981.  Plaintiff's
disability claim was denied initially and on reconsideration.
The Administrative Law Judge (ALJ) held a hearing on October 11,
2006, at which plaintiff and a vocational expert testified.  On
July 27, 2007, the ALJ issued a decision that plaintiff was not
disabled.  On November 16, 2007, the Appeals Council denied
plaintiff's request for further review.  The ALJ's decision,
therefore, was the Commissioner's final decision for purposes
of judicial review.

        Plaintiff seeks an Order from this court reversing the
Commissioner's final decision and remanding the case either for

2  - OPINION AND ORDER

immediate payment of benefits or for further development of the record.  For the following reasons, I **AFFIRM** the final decision of the Commissioner and **DISMISS** this action.

### THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of his disability.

At Step Two, the ALJ found plaintiff suffers from degenerative disc disease and depression, which are severe impairments under 20 C.F.R. §404.1520(d)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

At Step Three, the ALJ found plaintiff's impairments do not meet or equal listed impairments.  20 C.F.R. §416.1520(d). The ALJ found plaintiff has the residual functional capacity to perform light work, although he should only climb, stoop, kneel, or crawl occasionally.  He should also avoid close

3 - OPINION AND ORDER

interaction with co-workers or the general public.

At Step Four, the ALJ found plaintiff is unable to perform his past relevant work as a retail store manager, small engine mechanic, and business owner.

At Step Five, the ALJ found plaintiff is able to perform the jobs of security guard, small products assembler, marker, and electronics worker.  If plaintiff had sitting/standing limitations, he would not be able to work as a security guard and the number of jobs that he could still do that are available in the local and national economy would be cut in half.

Consistent with the above findings, the ALJ found plaintiff was not under a disability and denied his claim for benefits.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  To meet this burden, the claimant must demonstrate the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C § 423(d)(1)(A).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole.

42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision.  Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).  The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).  The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court.  Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.), cert. denied, 121 S. Ct. 628 (2000).  "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981).

## ISSUES ON REVIEW

Plaintiff contends the ALJ erred in (1) failing to give clear and convincing reasons for rejecting his testimony, (2) failing to address a treating physician's opinion regarding plaintiff's anxiety and depression, (3) failing to consider the comments of a lay witness, (4) failing to consider workplace limitations found by a reviewing DDS physician, (5) finding plaintiff could perform other work in the national economy, and (6) failing to give the appropriate weight to the Veteran Administration's (VA) disability evaluation.

## PLAINTIFF'S TESTIMONY/EVIDENCE

The following evidence is drawn from plaintiff's testimony, his disability application, his work and earnings history reports, DD Form 214 (Certificate of Release or Discharge from Active Duty), and Veteran's Administration (VA) records.

Plaintiff was 53 years old on the date of the hearing before the ALJ.  He has a high school diploma.  He served in the Air Force from 1971 to 1981 as an Avionics Navigation Systems Technician.  He served a tour of duty in Thailand and received an honorable discharge.

Before the onset of his alleged disability, plaintiff owned a saw shop, selling and repairing saws and small engines.  He worked 40 hours a week and employed either one or two employees at any given time.  He limited the amount of time he worked in

6  - OPINION AND ORDER

his business after the VA awarded him 60% disability in 2003 because of degenerative disc disease of the lumbosacral spine. He ceased operating the business entirely in May 2004 when the VA found he was also 50% disabled because of a major depressive disorder.  At that time, he was having difficulty doing the work and dealing with customers because of his temper outbursts.  He was able to do some repair work if he was sitting down but was unable to perform tasks such as sharpening saws because he had to stand.  Plaintiff's daughter did all the bookkeeping for the business.

Plaintiff also owns a 75 acre cattle farm.  At the time of the hearing, he was deciding whether to sell it.  The farm has never made money.  Plaintiff was able to cut and bale the hay for cattle feed but neighbors helped him put it out.

Since his discharge from the Air Force, plaintiff has suffered from depression that has worsened over time.  He has had to stop shopping with his wife because he often gets angry at other customers who block his path in the shopping aisle.

Plaintiff has had two transient ischemic attacks (a short-lived stroke with symptoms that persist up to 24 hours) in recent years and his memory has been worse since then.  He also tends to ignore matters, such as paying bills, when he is on anti-depressant medication.

Plaintiff has degenerative disk disease in his lower back. He has difficulty sitting without back support.  If he stands for too long his feet swell up.  If he walks any distance, his knees, hips, and feet swell.  He has not had back surgery because his doctors consider it a last option to be used only if he cannot continue to engage in his usual activities.  He now also has similar problems in his neck that affect his arms and hands.

When he was working, plaintiff was able to remain on his feet for 30-45 minutes, totaling two-three hours in an eight-hour day.

On a typical day, he rises between 7:30 and 8:30 a.m. and rides an ATV into the field to feed his cows.  He drags 35-45 lb bales of hay that need to be moved.  He then returns to the house for breakfast until late morning, when he putters around the farm.  He usually takes a two-three hour nap in the mid-afternoon because by then he is exhausted.

He used to enjoy woodworking as a hobby but now engages in it infrequently because he lacks the necessary attention span. He and his wife do not socialize much with others, possibly because of his PTSD.

In the past, plaintiff had difficulty working for bosses, even in the service, because he did not care for the "BS."  He could not work for an employer now because he is too independent.

## LAY WITNESS EVIDENCE

Plaintiff's daughter, Tracy Graham, submitted a statement in support of his disability claim, addressing his physical and psychological issues. As to the latter, she stated:

> [H]e suffers from PTSD. . . . He gets depressed often and relies strongly upon the little white pills he is prescribed to deal with this disorder. He was self-employed the last 17 years and recently closed his business. He does not respond well to criticism and stress is downright overwhelming for him. I don't care if someone cut him off while driving. It destroys his day. There is no possible way he could work for someone else. They would fire him within a week.

Tr. 116.

## VA DISABILITY RATINGS

The VA has rated plaintiff's disability on at least 14 occasions over a 23 year period through 2004.

In 1981, plaintiff filed a service-connected disability claim for low back pain related to a motorcycle accident in May 1980 in which he fractured his right collarbone and injured his back. The claim was denied.

In 1987, plaintiff complained of increased sharp back pains. He was diagnosed with myofascial low back pain with muscle strain, a fracture of the right mid-clavicle, a left inguinal hernia, and depressive and anxiety situational reaction with immaturity. He was assigned a disability rating of 10% based on his back pain.

9  - OPINION AND ORDER

In 1989, plaintiff was reassigned the same 10% rating for back strain with no finding of disability related to his nervous condition.  On exam, plaintiff had a tender lumbar spine with minimal muscular spasm and normal range of motion.

In 1993, plaintiff sought an increase in his rating based on a fracture of his right foot that he alleged occurred during the same motorcycle accident in which he injured his back while he was in the service.  Plaintiff's claim was denied because medical records from the accident did not show he broke his foot. In addition, a 1990 x-ray did not show any right foot fracture. Plaintiff retained his 10% rating with no additional amount based on his depression diagnosis.

In 1994, the VA increased plaintiff's disability rating to 20% based on an increase in his back pain.  Plaintiff's claim for an increased rating based on a right foot fracture was again denied.  In 1995 and 1996, the VA continued the same rating, noting plaintiff was not entitled to an increase because "there is no evidence of a severe lumbrosacral strain with abnormal mobility."

In 1998, the VA denied plaintiff's claim for an increase in his disability rating based on service-connected hearing loss, tinnitus, and a nose condition with nosebleeds.  The VA deferred a further decision based on his low back pain pending the receipt of additional medical evidence.

10 - OPINION AND ORDER

In 1999, the VA increased plaintiff's disability rating to 60% based on X-rays that showed a pronounced intervertebral disc syndrome in his back.

In August 2002, plaintiff again sought an increase in his disability rating based on degenerative disc disease, erectile dysfunction related to his back pain, PTSD, hearing loss, tinnitus, and nosebleeds.  The request was denied.  The VA, however, found plaintiff's erectile dysfunction was service-connected because it was caused by his back pain.  The VA denied his claim that he suffered from service-connected PTSD and deferred a decision on service-connected tinnitus.

In November 2002, the VA maintained a 60% disability rating for plaintiff's back pain but added a 10% disability rating for his tinnitus.  In May 2003, those ratings were continued.

In January 2004, the VA again maintained the previous ratings and denied plaintiff's request for service-connected disability arising from plaintiff's skin sores caused by alleged exposure to Agent Orange while he was stationed in Thailand.  The VA noted that the United States stopped using Agent Orange in Thailand in 1965.

In March 2004, the VA concluded plaintiff was entitled to a 50% disability rating for major depressive disorder in addition to his disability rating for lower back pain.

11 - OPINION AND ORDER

## MEDICAL TREATMENT EVIDENCE

Plaintiff's medical treatment has been provided almost exclusively by the VA Medical Center in Portland.  VA physicians have treated him for a multitude of physical and psychological complaints over the years.  This summary addresses only those medical issues related to his back pain, depressive disorder and PTSD that are relevant to his disability claim.

### Physical Impairments.

Medical records from 2001 to 2006 reflect plaintiff has received continuing treatment for complaints of low back pain resulting from a compression fracture he suffered in a motor cycle accident in 1980 while he was in the Air Force.

In May 2001, an MRI of plaintiff's back showed degenerative bone disease without spinal stenosis and "no obvious neurologic anatomical cause." He continued to have leg numbness, foot clumsiness, and increasing back pain, which were related to a heavy work load.

In August 2001, plaintiff complained of right shoulder pain. A neck MRI showed C7 radiculopathy.  He was diagnosed with right shoulder impingement.  In October 2001, plaintiff complained of continuing pain and weakness that he thought might force him to close his business.  In January 2002, plaintiff continued to complain of right shoulder pain and numbness with some evidence

of impingement.  He was diagnosed with "frozen shoulder."  In March 2002, he underwent a diagnostic shoulder arthroscopy and successful shoulder decompression.

In November 2002, plaintiff complained of being unable to work because he could only stand 2-3 hours per day because of pain in both knees and his low back.  X-rays showed only mild-to-moderate degenerative disc disease with mild changes shown on MRIs.  The treating physician noted "[h]is approach has been interesting given that he takes minimal pain meds . . . and has not stuck with any of the stretcing (<u>sic</u>) or exercise from [physical therapy]."

In April 2003, plaintiff was evaluated in connection with his claim for an increase in his physical disability benefits. He described his pain level as 3-4/10 on good days and 10/10 on bad days, with 15-20 bad days each month.  He complained of tingling and numbness in his right foot.  Examination findings were consistent with moderate to severe degenerative disc disease at L1-2 and L4-5 and associated radiculopathy.

In May 2004, plaintiff again reported low back pain radiating into the legs.

In March 2006, plaintiff complained of a pinched nerve in his left arm and a constant shooting pain for five months.  It was noted, however, that he remained "remarkably active taking care of farms and cows and digging clams."

13 - OPINION AND ORDER

In August 2006, plaintiff complained of lack of energy and fatigue, causing him to sleep a lot.

In September 2006, plaintiff stated he continued to have daily neck pain radiating bilaterally into his hands. He also had right elbow pain after falling from a backhoe.

**Psychological Impairments.**

In May 2001, plaintiff complained of the stress of running his business and getting angry, blowing up at work, not liking to deal with the public, and relying on his wife and employee to "run interference" with customers. He was working 13 hours a day, 6 days a week. His ongoing diagnosis was PTSD, depression, and anger control problems. He was advised to continue taking his medications, which were at the maximum dose, and to take a half-day off work at mid-week.

In July 2001, plaintiff's PTSD, depression, and anger were "fairly well" under control with medication. A month later, however, plaintiff still complained that he had anger outbursts. He had no "particular concerns apart from continued stress and hassles with business." In October 2001, plaintiff was doing "fairly well" with anger management. By January 2002, his anger and irritability were more manageable with medication but he still had agitated sleep and nightmares that were sufficient to keep him from sleeping with his wife.

In March 2002, plaintiff's medication was helping him to

14 - OPINION AND ORDER

control his anger outbursts.  Thereafter, through the remainder of the year, plaintiff reported outbursts of temper but his medication was helpful and he was able to walk away from possible altercations caused by his anger.

In January 2003, plaintiff reported stress because of his failing business.  He spoke of his military service in Thailand and stated his depression, anxiety, anger, and nightmares associated with PTSD began then.  He recalled having to assess the outcome of bombing raids and being upset with the U.S. bombing campaign in Vietnam.

In March 2003, plaintiff reported increased PTSD symptoms that were triggered when he filed a disability application based on PTSD that caused him to recall unpleasant events while he was in the military, including being beaten up by some local residents during a trip off base.  He expressed the hope that he could sell his business when his PTSD claim was approved.

In May 2003, plaintiff reported he had become so angry at a customer that he had slammed the door on her.  He could not tolerate the stress of public relations and was, therefore, trying to sell his business.

In March 2004, psychiatrist Mary Cason, M.D., concluded he suffered from Major Depressive Disorder that was service-connected.  She noted he had multiple mental health visits while he was in the Air Force, primarily for depression and anxiety,

15 - OPINION AND ORDER

and one instance where he was suicidal.  He had not exhibited mental health symptoms before joining the service.

In July 2004, plaintiff's PTSD symptoms improved when he allowed his wife to run the business, thereby reducing his stress level.  Nevertheless, he continued to have temper outbursts.  He preferred to be alone so as to avoid interactions with people that might cause him to lose his temper.

In November 2004, plaintiff's stress level increased to the point that he decided to shut his business down.

By January 2005, plaintiff's stress level was reduced and his PTSD was under "fair control," with no temper outbursts.

For the balance of 2005 and until February 2006, plaintiff's stress remained low but his depression increased.  He had no patience, which he attributed to no longer having "a sense of purpose or direction" in his life.

In August 2006, plaintiff's depression and irritability were responding well to medication and his nightmares had decreased.

### MEDICAL EVALUATION EVIDENCE

**Physical Limitations** - <u>Sharon Eder, M.D.</u>
<u>Richard Alley, M.D.</u>

Dr. Eder reviewed plaintiff's medical records and opined plaintiff has the residual functional capacity to occasionally lift 20 lbs and frequently lift 10 lbs, stand, walk, or sit about six hours in an eight-hour workday, and he has no limits

16 - OPINION AND ORDER

pushing and pulling.  He is able to balance and crouch frequently, and climb, stoop, kneel, and crawl, occasionally.

Dr. Eder concluded the evidence supports a finding that plaintiff is able to perform light work with some postural limitations.  She questioned some of plaintiff's statements regarding the severity of his pain.  Dr. Alley concurred in this opinion.

### **Psychological Limitations** - <u>Paul Rethinger, Ph.D.</u><br><u>Karen Bates-Smith, Ph.D.</u>

Dr. Rethinger reviewed plaintiff's psychological records and concluded plaintiff suffers from depression NOS and chronic PTSD.  He opined plaintiff has moderate psychological limitations in interacting appropriately with the general public and in accepting instructions and responding appropriately to criticism from supervisors.  Dr. Rethinger recommended that plaintiff should have only occasion general public contact and he should work for an understanding supervisor.  Dr. Bates-Smith concurred in Dr. Rethinger's opinion.

### **VOCATIONAL EXPERT TESTIMONY**

The ALJ asked the vocational expert (VE) what jobs existed in the national and regional economy for an employee with a high school education who was limited to light work with no prolonged standing, walking, or working on uneven terrain, and who should not have close interaction with the general public and only

17 - OPINION AND ORDER

occasional interaction with coworkers.  The VE opined such an
employee could not perform plaintiff's past relevant work but
could work as a security guard, small products assembler, and
marker.

Plaintiff's attorney then asked whether the jobs the VE
previously identified would be suitable for an employee who has
marked limitations in his ability to accept instructions and
respond appropriately to criticism from supervisors on a regular
and sustained basis.  The VE opined the jobs he previously
identified would be suitable because supervision would not be
regular and sustained.

## **ANALYSIS**

The ALJ discounted plaintiff's complaints regarding the
severity of his physical limitations and concluded plaintiff did
not suffer from the severe impairment of PTSD.  For the following
reasons, I conclude the ALJ did not err in not fully crediting
plaintiff's testimony regarding the severity of his physical
limitations and their impact on his ability to work.  I conclude,
however, the ALJ did err in his finding that plaintiff did not
have a severe impairment related to PTSD.  Nevertheless, I also
conclude the error was harmless.  See Carmickle v. Commissioner,
533 F.3d 1155, 1162 (9th Cir. 2008)(an error is harmless if it is
inconsequential to the ultimate non-disability determination).

18 - OPINION AND ORDER

a.  **Rejection of Plaintiff's Testimony**.

Plaintiff contends the ALJ failed to give clear and convincing reasons for not crediting his testimony regarding the severity of his physical and psychological impairments.

A claimant who alleges disability based on subjective symptoms "must produce objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged. . . .'" Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir. 1991) (quoting 42 U.S.C. § 423(d)(5)(A) (1988)). See also Cotton v. Bowen, 799 F.2d 1403, 1407-08 (9th Cir. 1986).  The claimant need not produce objective medical evidence of the symptoms or their severity. Smolen v. Chater, 80 F.3d 1276, 1281-82 (9th Cir. 1996).

If the claimant produces objective evidence that underlying impairments could cause the pain complained of and there is not any affirmative evidence to suggest the claimant is malingering, the ALJ is required to give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his symptoms. Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). See also Smolen, 80 F.3d at 1283.  To determine whether the claimant's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the claimant's reputation for lying, prior inconsistent statements

concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities. Id. at 1284 (citations omitted).

Here, there is no evidence that plaintiff is malingering. Plaintiff produced objective evidence that he suffers from degenerative disc disease of the spine. The ALJ, however, rejected plaintiff's claim that he has severe psychological limitations caused by PTSD because plaintiff was untruthful about the precipitating stressor, i.e., being exposed to Agent Orange during his tour of duty in Thailand. He also found plaintiff's daily activities in running his farm were inconsistent with his claimed physical impairments. Accordingly, the ALJ discounted plaintiff's testimony regarding the severity of his complaints and the extent of his functional and psychological limitations.

On this record, I conclude the ALJ gave clear and convincing reasons for not fully crediting plaintiff's testimony regarding his physical limitations in light of the regular daily activities he performed in running his farm while working 40 hours a week in his sawshop. In addition, the ALJ pointed out plaintiff's failure to follow his doctor's advice to exercise as a means of alleviating his back pain and his reluctance to take appropriate pain medications.

20 - OPINION AND ORDER

I conclude, however, the ALJ's reasons for rejecting plaintiff's testimony as to his psychological impairments caused by PTSD symptoms are not clear and convincing.  VA doctors repeatedly diagnosed plaintiff as suffering from PTSD.  Dr. Cason noted "[t]he vet does endorse the criteria B, C, and D for the post traumatic stress disorder."   The only issue was whether plaintiff's PTSD was service-connected.  The VA concluded the plaintiff's alleged exposure to Agent Orange, which was the purported PTSD stressor, could not have occurred while plaintiff was stationed in Thailand because Department of Defense records show the chemical was not used in that country after 1965. Accordingly, the VA found plaintiff's depression, but not his PTSD, was service-connected.  VA physician, Dr. Cason, however, did address other stressors in plaintiff's non-military history that could account for his PTSD symptoms.

For these reasons, I conclude the ALJ erred in rejecting plaintiff's testimony that he suffered from PTSD and I credit as true plaintiff's claim that he suffers from PTSD.

**b.    Failure to Address Treating Physician's Opinion.**

Plaintiff contends the ALJ erred in failing to consider Dr. Cason's opinion that plaintiff suffered from anxiety and depression.  The record reflects the ALJ accepted plaintiff's depression diagnosis and took it into account in determining the

21 - OPINION AND ORDER

extent of plaintiff's psychological impairments.  As noted
above, however, the ALJ erroneously rejected plaintiff's claim
that he suffers from PTSD.  The ALJ was required to consider
both plaintiff's depression symptoms and his PTSD symptoms in
considering whether plaintiff was capable of engaging in
substantial gainful activity.

**c.    Failure to Consider Lay Witness Evidence**.

Plaintiff's daughter offered evidence concerning plaintiff's
angry outbursts and poor reaction to stress and criticism that
was probative as to plaintiff's PTSD.  The ALJ did not refer to
or consider the evidence in making a finding that plaintiff's
PTSD was not a severe impairment.  The ALJ erred in failing to
give a germane reason for not considering the evidence.  Smolen
v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996).

**d.    Failure to Consider PTSD-Related Workplace Limitations**.

Plaintiff contends the ALJ did not consider the opinion
of the evaluating psychologist, Paul Rethinger, Ph.D., that
plaintiff would need to work with an "understanding supervisor
because he will not always respond well to criticism, due to the
PTSD/anger impulse control problems."  I disagree.

At the hearing, plaintiff's counsel posed a hypothetical
question to the VE that took into account plaintiff's PTSD
symptoms as well as his other limitations, including marked
limitations in interacting appropriately with the general public

22 - OPINION AND ORDER

and accepting instructions and criticism from a supervisor.  The VE responded that plaintiff would still be able to perform the jobs of security guard, small products assembler, and marker, because the level of supervision in those jobs was not regular and sustained.

As set forth above, I conclude the ALJ erred in failing to address evidence relating to plaintiff's PTSD symptoms and in not finding plaintiff suffered from severe PTSD.  Nevertheless, the errors were harmless because the VE ultimately opined that plaintiff's PTSD symptoms did not preclude him from engaging in substantial gainful activity.  Carmickle, 533 F.3d at 1162.

**e.   Ability to Perform Other Work.**

Plaintiff contends the combined limitations arising from his physical and psychological impairments limit him at best to perform other work that is sedentary and, therefore, because of his advanced age, he would have to be found disabled.  Distasio v. Shalala, 47 F.3d 348, 349-50 (9th Cir. 1995).

I disagree.  The limitations described in the hypothetical posed by plaintiff's counsel at the hearing involved light work. Accordingly, on this record, I conclude the ALJ was entitled to rely on the VE's opinion regarding the jobs that plaintiff could perform in light of plaintiff's credible physical limitations and his stated psychological limitations.

**6.  <u>Failure to Adequately Weigh VA Disability Determination</u>**.

Plaintiff contends the ALJ should have given more weight to
the VA disability ratings reflecting he was totally disabled by
his combination of physical impairments caused primarily by his
service-connected back injury and his psychological impairments
flowing from his depression.  I disagree.

The "ALJ must ordinarily give great weight to a VA
determination of disability . . . because of the marked
similarity between these two federal disability programs."
<u>McCartey v. Massanari</u>, 298 F.3d 1072, 1076 (9th Cir. 2002).
"Because the VA and SSA criteria for determining disability are
not identical, however, the ALJ may give less weight to a VA
disability rating if he gives persuasive, specific, valid reasons
for doing so that are supported by the record."  <u>Id.</u>  See <u>also</u>
<u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001)("ALJ
need not give great weight to a VA rating if he adequately
explain[s] the valid reasons for not doing so.").

The ALJ addressed the VA ratings decisions as follows:

> [I have] given due consideration to the VA
> determination; however, in contrast to the VA
> finding the claimant was unemployable, the
> undersigned notes the claimant testified he
> had been working full-time up until three
> months prior to the award by the VA.  The VA
> discounted this activity based on the
> claimant's low earnings.  However, Social
> Security recognized that self-employed
> individuals can minimize their earnings due

> to overhead, etc.  Here the claimant was
> working 40 per week and the VA's
> unemployability is not consistent with Social
> Security's determination of disability.
> While the claimant's earnings record did not
> reflect earnings over $3000, as found by the
> VA, the undersigned finds the claimant's
> self-employment constituted substantial
> gainful activity even if not profitable.  The
> record suggests the claimant cut back on his
> hours after having been awarded VA benefits.
> . . .  In sum, the undersigned finds the VA
> inexplicably awarded unemployability to a
> working self-employed individual, which is
> not accepted for purposes of eligibility for
> Social Security benefits.

Tr. 17.

I conclude the ALJ's reasons for disagreeing with and not following the VA's lead in awarding disability benefits to plaintiff are valid.

**7.  Summary.**

The ALJ erred in failing to address certain evidence and in failing to find specifically that plaintiff suffered from severe PTSD.  The ALJ, however, ultimately considered plaintiff's PTSD symptoms and consequent workplace limitations, as well as the physical limitations established by the record, in determining that plaintiff could engage in light work.  Accordingly, as stated above, I conclude the ALJ's errors relating to plaintiff's PTSD were harmless.  On the record as a whole, I conclude the ALJ did not err in finding plaintiff is able to engage in substantial gainful activity notwithstanding his VA disability rating.

## CONCLUSION

For these reasons, the Commissioner's final decision denying benefits to plaintiff is **AFFIRMED** and this matter is **DISMISSED** with prejudice.

IT IS SO ORDERED.

DATED this 24 day of November, 2008.


 /s/  Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

26 - OPINION AND ORDER